[No. 4898.]

THE COLORADO SPRINGS ELECTRIC COMPANY V. SOPER,
A MINOR, ETC.

1. **Damages—Personal Injuries—Verdict—Not Excessive.**

In an action for damages on account of injuries to a child, caused by a live wire negligently maintained by defendant, a verdict for $3,750 is not excessive, nor does it appear to have been given under the influence of passion and prejudice, where it appears from the testimony of plaintiff's witnesses that previous to the accident she was a strong healthy girl, but that since that time she has been sick with some nervous affection; that she was affected for some time with a slight curvature of the spine, which was later relieved, but one side of the chest was still considerably enlarged at the time of the trial, and that she was excessively nervous, improperly nourished and in a poor general condition.—P. 143.

2. **Damages—Personal Injuries—Evidence.**

In an action by a child for damages on account of injuries received, defendant was not prejudiced by the admission of evidence as to the medical treatment such child should receive in the future, since it was the duty of the parents to furnish proper medical treatment for the child, which could not be made a charge against defendant in such action.—P. 145.

3. **Evidence—Motion to Strike too Indefinite.**

Where the answer to a question includes several distinct sentences, a motion "to strike out the latter part of the answer" is too indefinite.—P. 145.

4. **Practice in Civil Actions — Instructions — Applicability to Evidence.**

In an action for damages on account of injuries to a child, caused by a live wire negligently left unguarded by defendant, an instruction to the effect that, inasmuch as it appears from the testimony of plaintiff's witnesses that, under proper care, plaintiff would in all probability entirely recover from the injurious effect of the accident within two or three years, plaintiff

is not entitled to recover for any permanent injuries, and can only recover for her pain and suffering which resulted directly from the accident, was properly refused where some of plaintiff's expert witnesses testified that, under favorable circumstances, the child might become cured within a year or two or three years, and some that under certain circumstances the effects of the shock might remain through womanhood.—P. 145.

5.  Appellate Practice—Damages—Excessive Verdicts—Result of Prejudice or Improper Motive.

Where, under the entire testimony, in an action for damages on account of injuries received by a child, caused by a live wire negligently left unprotected in a public place, it might appear that a smaller amount would probably compensate the plaintiff, still, since the jury saw the child, observed its condition at the time of the trial, heard the testimony, and it was for it to determine what the amount of the verdict should be, as long as they kept within reasonable bounds, the appellate court cannot declare as a matter of law that the verdict is so large as to demonstrate that it is the result of passion, prejudice, bias or any other improper motive.—P. 147.

*Appeal from the District Court of El Paso County. Hon. Louis W. Cunningham, Judge.*

Action by Dorothy E. Soper, a minor, by James C. Soper, her father and next friend, against The Colorado Springs Electric Company. From a judgment for plaintiff, defendant appeals.

*Affirmed.*

Messrs. HALL, BABBITT & THAYER, and Mr. F. L. SHERWIN, for appellant.

Mr. GEO. W. MUSSER, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This action grows out of the same transaction as that of the *Colorado Springs Electric Co. v. Donald C. Soper, ante,* p. 126. The plaintiff in this case was the twin sister of the plaintiff in the other case, was injured at the same time and under the same

circumstances, although in a slightly different manner. The verdict rendered in this case was for $3,750.

The first contention of defendant is, that the motion for a new trial should have been sustained because the damages awarded were excessive, and appear to have been given under the influence of passion and prejudice, and because of the insufficiency of the evidence to justify the verdict. In this case, as in the other, it appears from the testimony of plaintiff's witnesses that, previous to the accident, she was a strong, healthy girl; since that time she has been sick with some nervous affection. For some little time there was a slight curvature of the spine, which had been relieved previous to the trial. One side of the chest, however, was still considerably enlarged at the time of the trial. She was excessively nervous, improperly nourished, and her general condition was much like that more fully detailed in the case of her brother, Donald. Many methods were suggested which might effect a permanent cure, such as removing her to a different altitude, placing her under other conditions, and the like.

Without going into further details in this matter, which would be practically a reiteration of what was said in the other case, we will content ourselves by saying that there is sufficient competent testimony to sustain the verdict, and that if the testimony of the physicians and other witnesses called by plaintiff was true, and the jury must have believed it to be so, the verdict is not excessive.

Defendant contends that the court erred in admitting testimony as to the treatment the plaintiff should receive in the future, and refusing its motion to strike out a portion of the testimony. In order to present an intelligent idea of this question, it is

necessary to quote a portion of the testimony of Dr. Smith, plaintiff's witness:

"Q. Doctor, if, before this accident, the child was perfectly formed, the prominence in the chest was not there, her chest was symmetrical and developed, and that thereafter this prominence in the chest appeared—after the accident—to what would you attribute this prominence in the chest?

"A. Well, that is a pretty hard question to answer. To answer it directly, as the result of the injury, it would have to be a very indirect result; but knowing no other cause, the girl having no other serious illness, of course anything that is the matter with her as to having a causitive relation can only be referred to that, in my mind, but the way this could be produced by that would be very indirectly, through her mal-nutrition; that is the only way I could answer that question. * * * Probably by the lack of proper material being supplied to the bones, leaving them soft, and from her bad attitude, her bad habit of position, and the like; possibly that could cause it, but that is the only explanation I could give.

"Q. What would you say would be the treatment she should receive that would conduce more certainly to her recovery, if at all?

"Defendant objects because incompetent and immaterial. Objection overruled. Defendant excepts.

"A. Well, as for treatment for that girl, it seems to me the only treatment to give her, the only way to look at that, is to make it as though she were your own child, consequently she would be very valuable to you. With unlimited means, I would put a nurse with the girl; I would remove her from her present surroundings, probably from her parents. I would take her from this town, give her good food, frequent change. Probably some tonic treat-

ment; if necessary, electricity with medical tonics and massage. I would not bother her very much about school for the present, avoid any excitement of any kind.

"Defendant moves to strike out the latter part of the foregoing answer, for the same reasons heretofore assigned."

The motion was denied, and this is what gives rise to the contention of defendant that the court erred. One of the questions before the jury was as to the length of time which the plaintiff would suffer under proper treatment as a result of the injury, and this presents the question as to what the proper treatment might be. In any event, it being the duty of the parents to furnish proper medical treatment for their child, this could not be made a charge against the defendant. The action having been brought by the child and not for the parents, the witness's statement as to what such treatment should be, in order to produce a speedy recovery, could not have prejudiced the jury against the defendant. The motion to strike was too indefinite. Suppose the motion had been granted, and the court had instructed the jury that the latter part of the answer would be stricken, what portion would the jury consider was stricken? Would it be that the child should not be bothered much about school for the present, or would it be that she should receive tonic treatment or massage, or would it be that she should be taken from Colorado Springs, given good food and frequent change, or what portion of this treatment was intended to be eliminated by the motion to strike?

Appellant contends that the court erred in refusing to give instruction No. 8, tendered by it. This instruction is to the effect that, inasmuch as it appears from the testimony of plaintiff's witnesses that under proper care plaintiff would, in all proba-

bility, entirely recover from the injurious effect of the accident within two or three years, plaintiff is not entitled to recover for any permanent injuries, and can only recover for her pain and suffering which resulted directly from the accident. In relation to this instruction, we desire to again call attention to the testimony of Dr. Smith, who stated:

"If she don't get well, and is left impaired in strength, the most critical period is at the age of puberty, and later through her school life and early womanhood she is predisposed to any severe illness she may have. * * * Assuming that the girl will get well within a year or two, I don't think the scars upon her hand will have any effect upon her life; but, assuming that she will not, which I cannot say, and assuming that she becomes hysterical and neurasthenic and a nervous individual, these scars being located where they are, will always suggest to her, and will always remind her of the cause of her trouble."

Dr. Jones testified: "If a person does not recover, that is one of the remote effects, complete recovery; and if a person does not recover immediately, there may be certain nervous manifestations; a general depletion would be one of the general effects, and possibly a tendency to chorea. It is an unlimited subject—the remote effects of shock—it can be almost anything in the way of nervous phenomena, accompaniments of nervous trouble."

Upon cross-examination, he testified that she might be brought out of that condition within a year or two and a half.

Without going further into the testimony, it is sufficient to say that some of these expert witnesses testified that, under favorable circumstances, the child might become cured within a year or two or three years; some, that, under certain circumstances,

the effects of the shock might remain through womanhood. Therefore, in the condition of this record, the court would not have been justified in instructing the jury that the plaintiff would, in all probability, entirely recover within two or three years, and that she was not entitled to judgment for any permanent injuries. The court was no better able to determine when the child would recover than the jury.

This disposes of the only questions arising in this case that were not discussed and determined in the case of Donald C. Soper. While, under the entire testimony, it might appear that the judgment in each case is large, and that smaller amounts would probably have compensated the plaintiffs for all of the damage which they actually sustained or may sustain; still, the jury saw the children, observed their condition at the time of the trial, heard the testimony, and it was for it to determine what the amount of the verdict should be, as long as they kept within reasonable bounds, and we cannot declare, as a matter of law, that these verdicts are so large as to demonstrate that they are the result of passion, prejudice, bias or any other improper motive. Another jury might render a verdict for a less amount, and, on the other hand, another jury might render a verdict for a greater amount. These matters being within the province of the jury, we are not inclined to interfere, and the judgment will be affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.